[Cite as *State v. Wilson*, 2012-Ohio-4819.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97940**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DEONTE M. WILSON

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-554666

**BEFORE:** Sweeney, J., Blackmon, A.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** October 18, 2012

**ATTORNEY   FOR APPELLANT**

Joseph V. Pagano
P.O. Box 16869
Rocky River, Ohio   44116

**ATTORNEYS   FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Denise J. Salerno
Assistant County Prosecutor
1200 Ontario Street
Cleveland, Ohio 44113

JAMES J. SWEENEY, J.:

{¶1} Defendant-appellant Deonte M. Wilson ("defendant") appeals his convictions for aggravated robbery with a firearm specification and having a weapon while under disability. After reviewing the facts of the case and pertinent law, we affirm.

{¶2} Katelyn Kovac was working as a dancer at the Lido Lounge strip club in Cleveland when she met defendant sometime in August 2011. Defendant came to the club "just about everyday," and by September 2011, they had become "casual friends," exchanging telephone numbers. Defendant had been to Kovac's house one time. According to Kovac, defendant "wanted something a lot more" than friendship, but she did not take his advances seriously.

{¶3} On September 14, 2011, Kovac started her shift at Lido at 6:00 p.m. Defendant arrived at the club around 10:00 p.m. wearing a "brown zip-up hoody and brown sweatpants." Kovac specifically recalled this because it was "different" because defendant usually wore "expensive designer clothes." Defendant left Lido at approximately 10:45 p.m., and Kovac left at 11:30 p.m. The two did not speak to each other while Kovac was working, and when she left the club defendant began calling her cell phone. Kovac went to the grocery store and then went home. She did not answer defendant's calls.

{¶4} Kovac arrived at her apartment just after midnight on September 15, 2011, and parked her car in the alley. She walked to her building and, as she was opening the door, a man grabbed her by the neck, held a gun to her head, and pushed her inside. He

took her purse and groceries and ran away. Kovac testified that she "was able to turn [her] head to the left a little bit to get a view of what — what the person looked like, and [she] was also looking right at the gun * * *."

{¶5} According to Kovac, the man was defendant and the gun was silver and black, "like a cowboy gun." Defendant was still wearing the brown sweatpants and hoody with a black jacket over it. Defendant was also wearing "a black scarf [or] bandana * * * that was falling off of his face," and Kovac recognized him "[f]rom his upper lip, bottom of his nose up." Asked how well she knew what defendant looked like, Kovac answered, "I could draw a picture if I knew how to draw very well."

{¶6} Video from a surveillance camera outside of the store next to Kovac's apartment captured the robbery in question. The footage is grainy, however, and the robber's identity and the presence of a gun cannot be established. The video shows that the area was dim, but there was a light above Kovac's apartment door. The video corroborates her testimony that she was robbed.

{¶7} Kovac went back to work as scheduled at 6:00 p.m. on September 15, 2011. Defendant arrived at Lido within a half hour and approached Kovac, motioning for her to sit down. She attempted to act casual but immediately started crying and ran into the back. Kovac called the police and, when they arrived, she identified defendant as the man who robbed her the night before.

{¶8} On September 30, 2011, defendant was indicted for aggravated robbery in violation of R.C. 2911.01(A)(1), with a three-year firearm specification, and having a weapon while under disability in violation of R.C. 2923.13(A)(2).

{¶9} Defendant elected to try both counts to a jury, and the trial began on January 18, 2012. After Kovac's direct examination, the court and defendant — without the aide of defense counsel — engaged in a discussion on the record. Defendant expressed his concerned that it would be "biased" to use his prior conviction for robbery against him in front of the jury. The court explained that the information was necessary for the charge of having a weapon while under disability and that the charge could have been tried to a jury or to the court.

{¶10} Defense counsel stated the following: "Yes, your Honor. I advised [defendant] that he had the option of a bench trial, or a jury trial. I did not advise him that he could possibly bifurcate this trial and try the weapon under disability to the bench."

{¶11} Defendant stated that if he would have known this he would have "separated" his trials. The court stated that, with "great reluctance," it was "necessary to declare a mistrial."

{¶12} The court and defendant — without the aide of counsel — continued their discussion on the record about how to proceed. Defendant expressed his reservations that "both sides" had been compromised and that the judge knew about defendant's prior criminal history, including the fact that he was recently released from prison after serving 12 years for aggravated robbery. At one point in the colloquy, defendant appeared to be under the impression that if the jury acquitted him of the robbery charge, the weapons charge would "automatically disappear."

{¶13} The court explained to defendant that the trials and verdicts were independent of one another. Defendant waived his right to a jury and opted to try both

counts to the bench. All parties agreed to "start from where we left off," and the court vacated its previous order declaring a mistrial.

{¶14} The next day, January 19, 2012, the trial resumed with Kovac's cross-examination. The court found defendant guilty as indicted. On January 20, 2012, the court sentenced defendant to seven years in prison for aggravated robbery to run consecutively to the three-year firearm specification, and a concurrent two years in prison for having a weapon while under disability, for an aggregate sentence of ten years in prison.

{¶15} Defendant appeals and raises three assignments of error for our review.

I.

The court was without jurisdiction to conduct a bench trial because the jury waiver was not obtained by the court prior to the commencement of trial and the requirements of R.C. 2945.05 were not strictly followed.

{¶16} A criminal defendant is guaranteed the right to a trial by jury. Sixth Amendment to the U.S. Constitution; Ohio Constitution, Article I, Section 5; *State v. Lomax*, 114 Ohio St.3d 350, 2007-Ohio-4277, 872 N.E.2d 279. This right may be waived by the defendant pursuant to the procedures set forth in R.C. 2945.05 and Crim.R. 23(A).

{¶17} Crim.R. 23(A) states, in pertinent part, as follows:

In serious offense cases the defendant before commencement of the trial may knowingly, intelligently and voluntarily waive in writing his right to trial by jury. Such waiver may also be made during trial with the approval of the court and the consent of the prosecuting attorney.

{¶18} R.C. 2945.05 states, in pertinent part, as follows:

[T]he defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant, shall be in writing, signed by the

defendant, and filed in said cause and made a part of the record thereof. * * * Such waiver of trial by jury must be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel.

{¶19} In the instant case, the jury trial waiver was executed after the court declared a mistrial. Subsequently, the trial court vacated its order declaring a mistrial and continued with the witness's testimony without the jury. As defendant points out in his brief, there is no law on point with the highly unusual procedural posture of the case at hand.

{¶20} However, assuming for argument's sake that the court erred in proceeding with the bench trial, we find that the error was harmless as it did not result in any prejudice to defendant. First, as a result of the extensive dialogue between defendant and the court, we find that defendant knowingly, intelligently, and voluntarily waived his right to a trial by jury. A portion of the dialogue between the court and defendant follows:

> THE COURT: * * * I do not have to reach the same decision that the jury does. * * * There's — we act independently [of] one another. Do you understand that?
>
> THE DEFENDANT: Right.
>
> THE COURT: Okay.
>
> THE DEFENDANT: So, basically, a bench trial is basically the same thing, ain't it? It's like — I might as well go with the bench trial, huh?
>
> THE COURT: That is totally up to you. If you want to waive a jury and have a bench trial as to both counts, it's your decision. In other words, you have a right to have a trial to a jury or to a bench.
>
> THE DEFENDANT: Right.

THE COURT: On Count one or Count two, or both or neither. And you have to have a trial to somebody.

THE DEFENDANT: Right. I have to answer to somebody.

THE COURT: But it's totally up to you.

THE DEFENDANT: Just to get this over with, man, I'm going to go with the bench trial on everything, man, and let you make the decision, man?

Can you go on and do that right now, man? Because, excuse me, your Honor? I'm sorry. Your Honor, can we just go on and go with a bench trial on both of them, and I rather you just go on and decide it.

THE COURT: If we do that, Mr. Wilson, we have to agree that we'll start from where we left off. Do you understand that?

We've already had Miss Kovac testify, her direct examination, and we've had opening statements, we've had her testimony, and [defense counsel] was just getting ready to do his cross-examination.

THE DEFENDANT: Right.

THE COURT: If we're going to do that, then we're going to start tomorrow morning with the cross-examination of Miss Kovac.

Do you agree to do that?

THE DEFENDANT: Yeah, we might as well.

THE COURT: I don't —

THE DEFENDANT: Yes, your Honor.

THE COURT: I don't want you to say, Well, yes, let's just do it to get it over with.

I need to know that this is your decision, you want to try the case, the entire case to the Court, without a jury?

THE DEFENDANT: Yes, I rather — I guess I rather try it to the Court because you do know the law, and those people wouldn't. It's like,

you know, you're going off of facts instead of, you know, just here, basically, because I wouldn't be able to defend myself from my past.

You already know my past.

THE COURT: Okay.

THE DEFENDANT: It don't make — it would be better for me just to go with him.

THE COURT: What I'm going to do is prepare another waiver.

{¶21} Second, defendant executed this waiver in writing, in open court, and on the record, and it was signed, filed, and journalized prior to the bench trial. Accordingly, we find that the requirements of Crim.R. 23(A) and R.C. 2945.05 were met, and defendant's first assignment of error is overruled.

{¶22} In defendant's second and third assignments of error, he argues as follows:

II.

The trial court erred when it denied appellant's motion for acquittal under Crim.R. 29 because the State failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support the convictions.

III.

Appellant's convictions are against the manifest weight of the evidence.

{¶23} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact

could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶24}  The proper test for an appellate court reviewing a manifest weight of the evidence claim is as follows:

> The appellate court sits as the " thirteenth juror " and, reviewing the entire record, weighs all the reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*Thompkins* at 387.   Determinations of witness credibility are primarily left to the trier of fact.   *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).

{¶25}  In the instant case, defendant was convicted of aggravated robbery in violation of R.C. 2911.01(A)(1), which states, in part, that "[n]o person, in attempting or committing a theft offense * * * shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it * * *."

{¶26} The aggravated robbery charge included a three-year firearm specification in violation of R.C. 2941.145(A), which states that "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."

{¶27}  Defendant was also convicted of having a weapon while under disability in violation of R.C. 2923.13(A)(2), which states, in part, as follows: "[N]o person  shall knowingly acquire, have, carry, or use any firearm * * * if * * * [t]he person * * * has been convicted of any felony offense of violence * * *."

{¶28} According to the record, defendant has two prior convictions for robbery with firearm specifications, which are violent offenses for the purpose of R.C. 2923.13(A)(2). The disputed issues in the case are Kovac's identification of defendant as the man who robbed her and whether he had a gun.

{¶29} In rendering its verdict, the court noted that eyewitness identification is not always reliable. However, in the case at hand, the victim "knew the Defendant, had seen him frequently over several weeks, knew him whether it was casual, or through a business relationship, did know the Defendant." The court found that

> [h]er identification of the Defendant was not the result of prompting by improper police identification procedures. There was no photo array used here, although she didn't have the Defendant's full name.

> She knew who he was from the get-go, and has been consistent as to who it was from the moment — moments afterwards to the time she was questioned by the police to the time she spoke to the detective to the time she testified at trial.

> Therefore, I find that [Kovac's] testimony as to identification of her assailant is credible and overwhelming.

{¶30} Additionally, Kovac testified that defendant held a silver and black gun to her head as she was opening the door to her apartment and then ran off with her purse and her groceries. The court found that this testimony was "sufficient to conclude that, in fact, a firearm was used in order to facilitate that offense."

{¶31} Accordingly, we find that defendant's convictions are supported by sufficient evidence and not against the manifest weight of the evidence. Defendant's second and third assignments of error are overruled.

{¶32} Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

JAMES J. SWEENEY, JUDGE

PATRICIA ANN BLACKMON, A.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR